**IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF GEORGIA
MACON DIVISION**

| | |
|---|---|
| WASEEM DAKER, | : |
| Petitioner, | : |
| v. | : Case No. 5:18-cv-00171-MTT-CHW |
| WARDEN GREGORY MCLAUGHLIN, | : |
| Respondent. | : |

**ORDER**

Petitioner Waseem Daker, an inmate currently confined at Macon State Prison, has filed a pleading using the Court's standard form petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254. Pet., ECF No. 1. In the body of his pleading, Petitioner states that he brings civil rights claims under 42 U.S.C. § 1983 and is entitled to proceed under 28 U.S.C. § 2241. Pet. 1, ECF No. 1-1. Petitioner seeks to challenge the conditions of his confinement and raises a Fourteenth Amendment due process claim, First Amendment free speech claims, First Amendment access to courts claims, First Amendment religious exercise claims, a claim arising under the Religious Land Use and Institutionalized Persons Act ("RLUIPA"), and Eighth Amendment deliberate indifference to serious medical needs claims.

As discussed below, these claims are not cognizable in a habeas action, and to the extent that Petitioner's pleading can be construed as arising under § 1983, he is barred from proceeding *in forma pauperis* as he has accumulated three strikes for purposes of 1915(g).

Accordingly, the instant action is **DISMISSED WITHOUT PREJUDICE.**

> I. <u>**Petitioner Cannot Proceed Under 28 U.S.C. § 2254 or § 2241**</u>

Although Petitioner primarily styles this case as a habeas action brought under § 2254 or § 2241, the substance of his filing challenges the conditions of his confinement. "Federal law opens two main avenues to relief on complaints related to imprisonment: a petition for habeas corpus, 28 U.S.C. § 2254, and a complaint under the Civil Rights Act of 1871, Rev. Stat. § 1979, as amended, 42 U.S.C. § 1983." *Hill v. McDonough*, 547 U.S. 573, 578 (2006). "These avenues are mutually exclusive: if a claim can be raised in a federal habeas petition, that same claim cannot be raised in a separate § 1983 civil rights action." *Hutcherson v. Riley*, 468 F.3d 750, 754 (11th Cir. 2006) (citing *Nelson v. Campbell*, 541 U.S. 637, 643 (2004)). "The line of demarcation between a § 1983 civil rights action and a § 2254 habeas claim is based on the effect of the claim on the inmate's conviction and/or sentence." *Id*. "Challenges to the validity of any confinement or to the particulars affecting its duration are the province of habeas corpus." *Muhammad v. Close*, 540 U.S. 749, 750 (2004) (citing *Preiser v. Rodriguez*, 411 U.S. 475, 500 (1973)). "Such claims fall within the 'core' of habeas . . . [b]y contrast, constitutional claims that merely challenge the conditions of a prisoner's confinement, whether the inmate seeks monetary or injunctive relief, fall outside of that core and may be brought pursuant to § 1983 in the first instance." *Nelson,* 541 U.S. at 643 (citing *Muhammad*, 540 U.S. at 750 and *Preiser*, 411 U.S. at 498-99).

2

In this case, Petitioner seeks to challenge the conditions of confinement he experiences in Tier II administrative segregation at Macon State Prison and primarily seeks return to general population. Petitioner does not seek speedier or immediate release, does not challenge his sentence and conviction, and his claims for relief implicate neither. Therefore, the appropriate cause of action for Petitioner's claims is a civil rights complaint under § 1983.

In three separate locations on the Petition, Petitioner has handwritten "does not challenge [his] conviction or sentence but [his] segregation/solitary confinement, *Medberry v. Crosby*, 351 F.3d 1049, 1053 (11th Cir. 2003)." Pet. 1, 4-5, ECF No. 1. To the extent that Petitioner has cited *Medberry* for the proposition that he may challenge his placement in administrative segregation through a petition for writ of habeas corpus, his reliance is misplaced. In *Medberry*, the Eleventh Circuit held that "'it is proper for a district court to treat a petition for release from administrative segregation as a petition for a writ of habeas corpus' because '[s]uch release falls into the category of "fact or duration of. . . physical imprisonment' delineated in *Preiser v. Rodriguez*.'" *Medberry*, 351 F.3d at 1053 (ellipsis in original) (quoting *Krist v. Ricketts*, 504 F.2d 887, 887-88 (5th Cir. 1974)). *Medberry*, however, concerned a challenge to a Florida inmate's loss of gain time credits resulting from prison disciplinary proceedings. *Tedesco v. Sec'y for Dep't of Corr.*, 190 F. App'x 752, 755 (11th Cir. 2006) ("In *Medberry*, we held that a state prisoner may file a habeas corpus petition to challenge the loss of gain time as a result of state prison

3

disciplinary proceeding that allegedly violates his due process right under 28 U.S.C. § 2241."). Because gain time credits implicate the duration of an inmate's confinement, a due process claim based on a deprivation of gain time credits is "a proper subject for a federal habeas corpus proceeding." *Wolff v. McDonnell*, 418 U.S. 539, 557 (1974).

Petitioner is not incarcerated in Florida; he is in the custody of the Georgia Department of Corrections. The Georgia Department of Corrections does not award gain time credits for good behavior, and Petitioner does not allege that he has lost gain time credits as a result of disciplinary proceedings. Therefore, Petitioner's civil rights claims do not affect the duration of his confinement. Instead, even if Petitioner prevailed on all of his claims and received all the relief demanded, "the duration of his sentence will not be shortened by one moment." *McKinnis v. Mosely*, 693 F.2d 1054, 1057 (11th Cir. 1982). Accordingly, Petitioner's claims do not fall within the core of habeas, and are properly brought in a Section 1983 action. *See id.* (determining that challenge to administrative segregation which did not implicate duration of confinement should have been reviewed under Section 1983)[1]; *Jaske v. Hanks*, 27 F. App'x 622, 623 (7th Cir. 2001) (affirming dismissal of habeas petition challenging sentence to disciplinary segregation because

---

[1]Petitioner argues that while he is confined in Tier II he is deprived of the ability to participate in programs and activities that would be considered by the parole board. Petitioner does not have a liberty interest in parole, or in participating in programs which the parole board may view positively. *See Beister v. Lanier*, 249 F. App'x 782, 783 (11th Cir. 2007); *Miller v. Nix*, 346 F. App'x 422 (11th Cir. 2009); *Kramer v. Donald*, 286 F. App'x 674 (11th Cir. 2008); *Moody v. Daggett*, 429 U.S. 78 (1976).

"disciplinary segregation affects the severity rather than the duration of custody"); *Davis v. U.S. Dep't of Justice*, 180 F. App'x 404, 405 (3d Cir. 2006) ("A sanction of disciplinary segregation [] does not implicate the fact or length of confinement.").

## II. **Three Strikes**

Petitioner's claims are not cognizable in a habeas action and are properly raised in a civil rights complaint under § 1983. "When *a pro se* habeas corpus petition may be fairly read to state a claim under the Civil Rights Act, it should be so construed." *McDonald v. Bates*, 23 F. App'x 828, 828 (9th Cir. 2001); *Carson v. Johnson*, 112 F.3d 818, 820-21 (5th Cir. 1997) (affirming district court's treatment of purported habeas petition as a claim brought under § 1983); *United States v. Jordan*, 915 F.2d 622, 624-25 (11th Cir. 1990) ("Federal Courts have long recognized that they have an obligation to look behind the label of a motion filed by a pro se inmate and determine whether the motion is, in effect, cognizable under a different remedial statutory framework."). Therefore, the Court will analyze Petitioner's claims under 42 U.S.C. § 1983. So construed, Petitioner is barred from proceeding *in forma pauperis* as he has accumulated three strikes under 1915(g), and he failed to pay the entire filing fee upon initiating this suit. Therefore, his Complaint must be dismissed.

Federal law prohibits a prisoner from bringing a civil action in federal court *in forma pauperis*

> if [he] has, on 3 or more prior occasions, while incarcerated or detained in any facility, brought an action or appeal in a court of the United States that

5

was dismissed on the grounds that it is frivolous, malicious, or fails to state a claim upon which relief may be granted, unless the prisoner is under imminent danger of serious physical injury.

28 U.S.C. § 1915(g). This is known as the "three strikes provision." Under § 1915(g), a prisoner incurs a "strike" any time he has a federal lawsuit or appeal dismissed on the grounds that it is frivolous or malicious or fails to state a claim. *Medberry*, 185 F.3d at 1193. If a prisoner incurs three strikes, his ability to proceed *in forma pauperis* in federal court is greatly limited and leave may not be granted unless the prisoner shows an "imminent danger of serious physical injury." *Id.*

A review of court records on the Federal Judiciary's Public Access to Court Electronic Records ("PACER") database reveals that Petitioner has filed at least three federal lawsuits that have been dismissed as frivolous, malicious, or for failure to state a claim. *Daker v. Mokwa*, No. 2:14-cv-00395 (C.D. Cal. 2014) (dismissing case under 28 U.S.C. § 1915(e)(2)(B) and finding claims were frivolous and failed to state a claim upon which relief may be granted)[2]; *Daker v. Warren*, Case No. 13-11630 (11th Cir. Order dated Mar. 4, 2014) (three-judge panel dismissing appeal as frivolous); *Daker v. Warden*, Case No. 15-13148 (11th Cir. Order dated May 26, 2016) (three-judge panel dismissing appeal as frivolous); *Daker v. Commissioner*, Case No. 15-11266 (11th Cir. Order dated Oct. 7, 2016) (three-judge panel dismissing appeal as frivolous); *Daker v. Ferrero*, Case No. 15-

---

[2]"The district court did not err, however, in concluding that . . . *Daker v. Mokwa*, No. 2:14-cv-395 (C.D. Cal. filed Jan. 16, 2014), counted as a strike." *Daker v. Head*, 2018 WL 1684310, at *2 (11th Cir. 2018).

13176 (11th Cir. Order dated Nov. 3, 2016) (three-judge panel dismissing appeal as frivolous); *Daker v. Governor*, Case No. 15-13179 (11th Cir. Order dated Dec. 19, 2016) (three-judge panel dismissing appeal as frivolous). The Eleventh Circuit has also previously determined that "[w]hile confined, Daker has filed at least three appeals that [the Eleventh Circuit] dismissed as frivolous." *Daker v. Robinson*, Case No. 17-11940 (11th Cir. Order dated Oct. 4, 2017) ("[T]his Court's Clerk is directed to list Daker as a 'three-striker' under the Prison Litigation Reform Act in this Court for purposes of future matters.").

Because of this, Petitioner may not proceed *in forma pauperis* unless he can show that he qualifies for the "imminent danger" exception in § 1915(g). *Medberry*, 185 F.3d at 1193. The Court is therefore now required to review the facts alleged in the Petition to determine whether an imminent danger exists and warrants an exception to the three strikes rule. When reviewing a *pro se* complaint for this purpose, the district court must accept all factual allegations in the complaint as true and view all allegations of imminent danger in the movant's favor. *Brown v. Johnson*, 387 F.3d 1344, 1347 (11th Cir. 2004); *Tannenbaum v. United States*, 148 F.3d 1262, 1263 (11th Cir. 1998).

The imminent danger exception applies only in "genuine emergencies" when (1) "time is pressing," (2) the "threat or prison condition is real and proximate," and (3) the "potential consequence is serious physical injury." *Lewis v. Sullivan*, 279 F.3d 526, 531 (7th Cir. 2002). Thus, to satisfy this provision, a prisoner must allege specific facts that

7

describe "an ongoing serious physical injury, or of a pattern of misconduct evidencing the likelihood of imminent serious physical injury." *Sutton v. Dist. Attorney's Office*, 334 F. App'x 278, 279 (11th Cir. 2009) (quoting *Brown*, 387 F.3d at 1350). Vague, factually unsupported, and general allegations do not suffice, nor do allegations of past injuries. *See Martin v. Shelton,* 319 F.3d 1048, 1050 (8th Cir. 2003).

Petitioner does not allege that he is under an imminent danger of serious physical injury. The majority of his claims also do not implicate a risk of physical danger, much less one that is serious and imminent. Petitioner's claims regarding the processes which keep him confined in Tier II, restrictions on freedom of speech and access to books and newspapers, restrictions on his access to the law library and legal materials, restrictions on his ability to attend prayer service and religious holidays, and restrictions on his visitation and privileges do not arguably demonstrate an imminent danger of serious physical injury as they do not implicate a risk to Petitioner's health or safety. Petitioner's remaining claims concerning exposure to human waste, denial of adequate food, and deficiencies in his medical care arguably concern his health and safety. The Petition taken as a whole and construed in his favor, however, does not show that he is in an imminent danger of serious physical injury.

Petitioner's allegations concerning inadequate nutrition are that a lunchtime milk, a "Vitamin C Beverage," and late-night fruit are often missing from Petitioner's 2800 calorie diet. Pet. 15-17, ECF No. 1-1. Petitioner does not allege that missing 330 calories a week,

8

by his estimation, from his "2800 calorie diet and HS Snack" somehow results in an imminent danger to Petitioner. Rather, he alleges that he was underweight in the past. Moreover, Petitioner's allegations are generalized and primarily concern what occurs in the Georgia Department of Corrections and "Tier II/III" generally. The factual allegations concerning what has actually occurred to Petitioner, rather than what "often happens" in Georgia prisons, largely concerns past events at Georgia State Prison. *Id*. at 15.[3] Concerning Macon State Prison, where Petitioner is currently confined and was confined at the time he filed this action, Petitioner states that "At GDCP, GSP, and MSP, the Food Service department that prepares lockdown trays often does not send the Vitamin C Beverage to the lockdown units." *Id.* According to Plaintiff, the diet has "likely contributed" to six sinus infection he has suffered since being placed in Tier II.[4] Pet. 17, ECF No. 1-1.

Petitioner's allegations concerning inadequate medical care are equally general and broadly describe what "often" occurs at Tier II/III dorms throughout the Georgia prison system. *Id*. at 17-18. Concerning medical care Petitioner himself has received or failed to receive, Petitioner merely states that he had surgery on his right wrist in August 2017 and was not permitted to attend one follow-up appointment two days later. *Id*. at 17. Petitioner

---

[3] ". . . maintain a custom in the GDC and at GSP." *Id*. "At GSP, the Food Service department that prepares . . . ." *Id*.
[4] According to Plaintiff, he was placed in the SMU while incarcerated at Georgia Diagnostic and Classification Prison beginning in October 2012. Pet. 2, ECF No. 1-1.

does not allege that he suffered an injury as a result. In the "denial of adequate dental care on Tier II/II" portion of his pleading, Petitioner also alleges that in December 2016, a dentist's note recognized that Petitioner complained that his teeth were sensitive to temperature, and she recommended Sensodyne to Petitioner. Pet. 18, ECF No. 1-1. There is absolutely no indication that absent Sensodyne, Petitioner is at risk of serious injury. Indeed, Petitioner does not even allege that his teeth hurt, except as reflected in the purported dentist records from 2016.

Finally, Petitioner alleges that he is exposed to feces because other inmates, who Petitioner refers to as projectors, throw their bodily fluids out of their cells. *Id.* at 18-20. Petitioner states that he often has to endure the stench of feces and the "concomitant health risks." *Id.* at 19. Petitioner, however, also alleges that the feces cleaned up orderlies, although it may take hours or overnight for them to do so.[5] *Id.* Petitioner does not allege that he himself has been projected on or is prevented from cleaning it up should a projector project onto Petitioner or into his cell. Indeed, it appears Petitioner alleges projectors primarily target each other and then the smell wafts over to Petitioner. See *id.* at 19. This does not demonstrate an imminent danger to his safety. Moreover, Petitioner has been alleging since at least January 2017 that other inmates confined in administrative segregation throw their feces in the dorm. *See Daker v. Dozier*, 2017 WL 3037420, at *4

---

[5]In this section of his Petition, he also alleges that "[o]ften the pill call nurses will not enter a dorm with a projection." *Id.* at 19. Petitioner does not allege that he specifically has missed a medication as a result.

10

(M.D. Ga. 2017). In that time, Petitioner has been confined in at least three separate prison facilities. Pet. 2, ECF No. 1-1. He does not allege that this has occurred at Macon State Prison in the one-month period since he was transferred from Georgia State Prison.

Taking the Petition as a whole, as the Court is required to do, Petitioner has failed to satisfy the imminent danger standard. Most of Petitioner's allegations are generalized and appear to primarily concern what occurs in general throughout the Georgia Department of Corrections. Courts have repeatedly held that such generalized allegations are insufficient to satisfy the imminent danger standard. See *Daker v. Dozier*, 2017 WL 3037420 (M.D. Ga. 2017); *Daker v. Dozier*, 2018 WL 582581 (S.D. Ga. 2018); *Daker v. Dozier,* 2017 WL 3037420 (M.D. Ga. 2017). Where Petitioner has presented specific examples of events personal to him, they largely concern past events and risks that occurred sometime in the past. A past threat of serious physical injury is insufficient to plead imminent danger. *O'Connor v. Suwannee Corr. Inst*., 649 F. App'x 802, 804 (11th Cir. 2016). Finally, allegations of sensitive teeth and occasional sinus infections, of "often" missing a fruit or drink with a meal or snack, and of confinement in the same dorm with inmates that throw their feces are insufficient to show that Petitioner is in an imminent danger of serious physical injury. Accordingly, Petitioner does not qualify under the imminent danger exception.

### III. Conclusion

As discussed above, Petitioner seeks to proceed in this action under 28 U.S.C. § 2241, 28 U.S.C. § 2254, and 42 U.S.C. § 1983. Petitioner, however, does not challenge his conviction or contest the duration of his confinement. Instead, Petitioner seeks to raise multiple civil rights claims based on the conditions of his confinement. Therefore, to the extent that Petitioner seeks to proceed under § 2241 or §2254, his claims are not cognizable. Petitioner cannot proceed under § 1983 either, as he has failed to pay the $400.00 filing fee[6] and has accumulated three strikes for purposes of 1915(g) in the event that he wishes to proceed *in forma pauperis*. Accordingly, this action is **DISMISSED WITHOUT PREJUDICE.**

**SO ORDERED**, this 18th day of July, 2018.

S/ Marc T. Treadwell
MARC T. TREADWELL, JUDGE
UNITED STATES DISTRICT COURT

---

[6] Petitioner cannot circumvent the provisions of 1915(g) by styling his Section 1983 civil rights complaint as an action brought under § 2254. This includes the filing fee applicable to civil rights cases. "He must pay the filing fee at the time he initiates suit." *Dupree v. Palmer*, 284 F.3d 1234, 1236 (11th Cir. 2002).